**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except under the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190049-U

Order filed February 17, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Stark County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0049 Circuit No. 18-CF-7 |
| | ) | |
| JONATHAN C. FOLGER, | ) ) | Honorable Stephen A. Kouri, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE WRIGHT delivered the judgment of the court.
Justices Daugherity and Holdridge concurred in the judgment.

**ORDER**

¶ 1     *Held*:   (1) Defendant's stipulated bench trial was not tantamount to a guilty plea; (2) the State's evidence was sufficient to sustain a conviction for aggravated battery; and (3) one-act, one-crime principles require vacatur of three of defendant's convictions.

¶ 2     Defendant, Jonathan C. Folger, appeals following a stipulated bench trial, at which he was convicted of five criminal offenses. He argues that the stipulated bench trial was tantamount to a guilty plea, such that the Stark County circuit court was obligated to deliver the admonishments pertinent to such a plea. The court's failure to deliver those admonishments,

defendant argues, requires this court to vacate his convictions. Alternatively, he argues that one of his convictions for aggravated battery should be vacated on the grounds of insufficient evidence. Finally, defendant contends that even if this court does not afford relief under either of his first two arguments, we must vacate three of his convictions pursuant to one-act, one-crime principles. We affirm in part, vacate in part, and remand with directions.

## I. BACKGROUND

Defendant was charged via criminal complaint with five distinct offenses. Counts I through III of the complaint alleged offenses directed toward J.C.F, a family member of defendant. Count I charged defendant with aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2018)), alleging that defendant intentionally strangled J.C.F. Count II charged defendant with aggravated battery (*id.* § 12-3.05(a)(5)) and also alleged that defendant strangled J.C.F. Count III charged defendant with domestic battery (*id.* § 12-3.2(a)(2)), in that he "grabbed the neck and head of JCF."

Counts IV and V of the complaint alleged offenses directed toward Officer Aaron Stout. Count IV charged defendant with aggravated battery of a peace officer (*id.* § 12-3.05(d)(4)), alleging that defendant made contact of an insulting and provoking nature with Stout in that he "struggled and rolled" while in Stout's grasp. Count V alleged the same conduct and charged defendant with resisting a peace officer (*id.* § 31-1).

On July 6, 2018, defense counsel informed the court that the parties had agreed to proceed on an agreed set of facts. Counsel further asserted that "[w]e would then raise the affirmative defense of mistake of law/mistake of fact on that day rather than having a full-blown bench trial."

2

¶ 7    The matter proceeded to trial on September 4, 2018. On that date, the parties jointly submitted a document titled "Facts Tendered in Stipulation." Defense counsel represented that defendant was stipulating to the facts contained therein and that he would "present an affirmative defense of mistake of fact and/or law." Counsel also indicated that defendant would testify at trial. The following exchange ensued:

> "THE COURT: *** I want to be crystal clear on this for me here. This is not what we call a stipulated bench trial. This is—you're simply stipulating the facts, but you're contesting a finding of guilt here?
>
> [DEFENSE COUNSEL]: Correct. In order to raise the affirmative defense, we stipulate to the State's evidence and then offer an explanation."

¶ 8    The stipulated facts established that Angela Cecil was with defendant and her seven-year old son, J.C.F., on the date of the alleged offenses. J.C.F. is defendant's son. Cecil observed that defendant did not seem like himself that day. Later in the day, Cecil was driving while defendant was in the front passenger seat and J.C.F. was in the middle of the backseat. Cecil heard defendant talking to himself, saying things such as "God is going to save us" and "It's okay, we can all die but it's going to be okay." Defendant then reached into the backseat and began squeezing J.C.F.'s legs. Defendant was shaking J.C.F. as Cecil shouted at him to stop. At one point, defendant placed his hands around J.C.F.'s neck. Cecil could not break defendant's grip, so she stopped the car outside of the Stark County Sheriff's Office.

¶ 9    David Prindville lived across the street from the sheriff's office. Prindville heard a male voice screaming "I'm going to kill you! I don't want to go to hell! Let me take you to heaven!" Prindville ran to the car and was able to pry defendant's hands from J.C.F.'s neck. While Cecil

and J.C.F. ran into the sheriff's office, Prindville "locked the confused man in the car." Prindville later observed that it required several officers to physically restrain defendant.

¶ 10    Aaron Stout of the Toulon Police Department would testify that defendant did not respond to instructions to stop struggling and calm down.

> "The defendant physically struggled with Officer Stout who was attempting to restrain the defendant while both parties were on the ground. During the physical contact, Officer Stout sustained two (2) long scrapes on his inner right forearm and a cut on his right elbow."

¶ 11    Defendant testified that on the day in question he was in a paranoid state and believed that Cecil was "against" him. The people that he had been around earlier that day, including Cecil's family, all "looked scary" to him. Defendant believed his actions were necessary to protect his son. He testified: "I was trying to hold him, bring him closer to me so nothing would hurt him." Defendant did not feel like himself that day. He had begun to feel paranoid when he heard a "super scary voice" talking to him. During his encounter with Stout, defendant still believed his son needed to be protected. Defendant denied drinking any alcohol that day.

¶ 12    In closing, the State argued that defendant's testimony was "self-serving" and "positively ludicrous." Defense counsel argued that for the mistake of fact defense to apply, defendant need not have been factually correct in his beliefs. Rather, the court could find defendant not guilty if it found he was under the reasonable but mistaken belief that his actions were necessary to protect J.C.F.

¶ 13    The court found defendant guilty on all counts and sentenced him to four years' probation. The written sentencing order indicated that defendant was convicted of each of the five offenses for which he was found guilty.

4

¶ 14                                    II. ANALYSIS

¶ 15        Defendant raises three arguments on appeal. First, he argues that his stipulated bench trial

was tantamount to a guilty plea, and that the court therefore erred by not delivering guilty plea

admonishments. Next, he contends that the evidence of aggravated battery with respect to Stout

was insufficient to sustain a conviction. Finally, he argues that three of his convictions must be

vacated under one-act, one-crime principles. We address each argument in turn.

¶ 16                              A. Stipulated Bench Trial

¶ 17        A stipulated bench trial will be considered tantamount to a guilty plea in two instances:

"(1) when the State's entire case is to be presented by stipulation *and* the defendant does not

present or preserve a defense; *or* (2) the stipulation includes a statement that the evidence is

sufficient to convict the defendant." (Emphasis in original.) *People v. Clendenin*, 238 Ill. 2d 302,

321 (2010). "The reason why a stipulation that fails to preserve a defense is tantamount to a

guilty plea is that the defendant, by failing to preserve a defense, functionally admits his guilt

(much as he does when he stipulates that the evidence is sufficient to convict)." *People v. Taylor*,

2018 IL App (2d) 150995, ¶ 12. When a stipulated bench trial is tantamount to a guilty plea, the

court must admonish the defendant pursuant to Illinois Supreme Court Rule 402(a) (eff. July 1,

2012).

¶ 18        In the present case, defendant did not stipulate that the evidence was sufficient to convict,

nor did he otherwise functionally admit his guilt. On the contrary, he explicitly presented the

affirmative defense of mistake of fact,[1] testified in support of that defense, and argued—via

counsel—that he should be found not guilty. Based on the well-established rule recited in

---

[1]Though defense counsel often referenced mistake of fact and mistake of law in tandem, it is clear
that the defense actually asserted was mistake of fact. See 720 ILCS 5/4-8(a) (West 2018).

*Clendenin*, defendant's stipulated bench trial was therefore not tantamount to a guilty plea. It follows that the court did not commit error by not admonishing defendant pursuant to Rule 402(a).

¶ 19    In reaching this conclusion, we reject defendant's contention that no defense was presented or preserved because the defense raised was "not legally viable." Defendant has cited no authority in support of the proposition that the substantive merits of a defense play any role in determining whether a stipulated bench trial was tantamount to a guilty plea. In fact, case law suggests otherwise. See, *e.g.*, *Taylor*, 2018 IL App (2d) 150995, ¶ 11 ("[T]he nature of the defense does not matter so long as defendant actually preserved a defense."); *People v. Bonham*, 106 Ill. App. 3d 769, 772 (1982) ("In practice, appellate courts have not attached any significance to the type of defense presented or stipulated at the bench trial.").

¶ 20    Finally, defendant argues that no defense was actually "preserved" because no posttrial motion was filed. Defendant references the rule that in order to preserve an issue for appeal— that is, to avoid forfeiture of the issue—a defendant must raise said issue in a posttrial motion. *E.g.*, *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, as this court has observed, the very purpose of a stipulated bench trial is that it "allows a defendant to avoid the forfeiture rule as to an issue the defendant seeks to raise on appeal, while still allowing the defendant to enjoy the advantages of a guilty plea." *People v. Weaver*, 2013 IL App (3d) 130054, ¶ 17. Accordingly, the stipulated bench trial obviates the requirement of a posttrial motion. *People v. Cordero*, 358 Ill. App. 3d 121, 124 (2005) ("It would be illogical to find waiver where the State and defendant specifically agreed to a procedure designed to preserve the very issue raised here."). In any event, the controlling rule requires only that defendant present *or* preserve a defense. *Clendenin*,

6

238 Ill. 2d at 321. As discussed above, defendant presented a defense, and his stipulated bench trial was therefore not tantamount to a guilty plea.

¶ 21                                    B. Sufficiency of the Evidence

¶ 22        Defendant argues that the stipulated evidence with respect to count IV—aggravated battery of Officer Stout—was insufficient. As charged, the State was burdened with proving that defendant knowingly made contact of an insulting and provoking nature with Stout (720 ILCS 5/12-3(a)(2) (West 2018)) and that Stout was a peace officer performing his official duties (*id.* § 12-3.05(d)(4). Defendant does not dispute that Stout was a peace officer or that he was performing his official duties. Rather, he contends that the State failed to introduce sufficient evidence of the first element because "[t]here was no indication that defendant initiated any contact with Stout. He simply resisted the officer's contact."

¶ 23        It is not the purpose of a reviewing court to retry a defendant when he challenges the sufficiency of the evidence on appeal. *People v. Milka*, 211 Ill. 2d 150, 178 (2004). A conviction will be affirmed where, considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). When considering whether the evidence at trial was sufficient, we must allow all reasonable inferences from the record in favor of the prosecution. *People v. Bush*, 214 Ill. 2d 318, 326 (2005).

¶ 24        Initially, even if it is assumed that Stout made the initial physical contact with defendant, that does not eliminate the possibility that defendant's actions after that point could amount to a battery. The evidence here established that in Stout's attempt to arrest or subdue defendant, defendant commenced a "physical[ ] struggle[ ]" with Stout. Stout suffered injuries to his arm during the struggle. The trier of fact could easily infer from these facts that defendant's struggle

7

with Stout caused the contact with Stout's arm that resulted in the injuries. Moreover, where Stout was on the ground struggling with a violent person who refused to be restrained, and suffered injuries as a result, the trier of fact could reasonably conclude that the contact was insulting and provoking. See *People v. d'Avis*, 250 Ill. App. 3d 649, 651 (1993) ("[A] particular physical contact may be deemed insulting or provoking based upon the factual context in which it occurs.").

¶ 25    Defendant argues that to find battery in the instant case would eliminate the distinction between aggravated battery of a peace officer and resisting a peace officer. He contends: " '[R]esisting' necessarily requires contact. Any contact in contravention to the apparent authority of a police officer would be considered 'insulting or provoking.' " This argument is meritless on its face. The offense of resisting or obstructing a peace officer requires only "some physical act" of resistance (*People v. Baskerville*, 2012 IL 111056, ¶ 20), and can therefore be committed in innumerable ways that do not involve contact with the officer, such as running from the police (*People v. Scherer*, 2019 IL App (3d) 180227, ¶ 11) or even the prolonged refusal to comply with orders (*People v. Synnott*, 349 Ill. App. 3d 223, 228-29 (2004)). Even where contact is made with the arresting officer, cases in which that contact does not cause bodily harm and is not insulting and provoking will not rise to the level of aggravated battery. In short, aggravated battery of a peace officer and resisting a peace officer are wholly distinct offenses, and the State sufficiently proved defendant guilty of the former.

¶ 26                                C. One-Act, One-Crime

¶ 27    Defendant next argues that three of his five convictions must be vacated under one-act, one-crime principles. Specifically, he contends that each of the three charges related to J.C.F. was based on the same physical act—grabbing J.C.F.'s neck. Similarly, he points out that the two

8

charges related to Stout were based on the same conduct. Accordingly, he argues that the lesser offenses, aggravated battery (count II), domestic battery, and resisting a peace officer, must be vacated.

¶ 28 The one-act, one-crime rule bars criminal convictions in two distinct circumstances. First, "a criminal defendant may not be convicted of multiple offenses when those offenses are all based on precisely the same physical act." *People v. Coats*, 2018 IL 121926, ¶ 12. Second, a defendant may not be convicted for both a greater offense and its lesser included offense. *Id.*; *People v. Peacock*, 359 Ill. App. 3d 326, 331 (2005).

¶ 29 The charge of aggravated battery against J.C.F. was based upon precisely the same physical act as was the charge of aggravated domestic battery: strangling J.C.F. Likewise, the charge of resisting a peace officer was based upon precisely the same physical act as was the charge of aggravated battery of a peace officer against Stout: struggling and rolling while in Stout's grasp. The State concedes that defendant's convictions for aggravated battery against J.C.F. (count II) and resisting a peace officer must be vacated. We agree.

¶ 30 With respect to the charge of domestic battery, the State points out that the additional physical act of grabbing J.C.F.'s head was charged in the indictment. Nevertheless, the State concedes that the domestic battery conviction should be vacated because it is a lesser included offense of aggravated domestic battery. Again, we agree. See 720 ILCS 5/12-3.3(a-5) (West 2018) (establishing that commission of domestic battery is a necessary element of aggravated domestic battery).

¶ 31 Accordingly, based on the State's concessions of error which are supported by the record, we remand the matter with directions that the circuit court vacate defendant's convictions for aggravated battery (count II), domestic battery, and resisting a peace officer.

¶ 32                                 III. CONCLUSION

¶ 33          The judgment of the circuit court of Stark County is affirmed in part, vacated in part, and

remanded with directions.

¶ 34          Affirmed in part and vacated in part.
¶ 35          Remanded with directions.